UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT G., § § Plaintiff, § § v. § COMMISSIONER OF SOCIAL SECURITY, § § Defendant. § | Case # 1:19-cv-1482-DB<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Plaintiff Scott G. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 20).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 13, 15. Plaintiff also filed a reply brief. *See* ECF No. 19. For the reasons set forth below, Plaintiff's motion (ECF No. 13) is **GRANTED**, the Commissioner's motion (ECF No. 15) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings.

## BACKGROUND

Plaintiff protectively filed his application for DIB on July 17, 2016, alleging disability beginning February 22, 2016 (the disability onset date), due to multiple sclerosis and other impairments. Transcript ("Tr.") 222-25, 250. Plaintiff subsequently amended his alleged onset date to May 9, 2016. Tr. 84. Plaintiff's claims were denied initially on January 19, 2017 (Tr. 136-41),

after which he requested a hearing (Tr. 142-43). Administrative Law Judge John R. Allen (the "ALJ") held a video hearing on October 2, 2018. Tr. 57. The ALJ presided over the hearing from Toledo, Ohio. *Id*. Plaintiff appeared and testified in Buffalo, New York, and was represented by Thomas C. Burnham, an attorney. *Id*. Cyndee Burnett, an impartial vocational expert ("VE"). also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on October 15, 2018, finding that Plaintiff was not disabled. Tr. 54-70. On September 3, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-4. The ALJ's October 15, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his October 15, 2018 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020;

2. The claimant has not engaged in substantial gainful activity since May 9, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*);

3. The claimant has the following severe impairments: multiple sclerosis; migraine; lumbar degenerative disc disease; cervicalgia; adjustment disorder with anxiety and depression (20 CFR 404.1520(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a)[1] and SSR 83-10, except the claimant can occasionally kneel, stoop, crouch, or crawl. He must avoid working at unprotected heights or around hazardous machinery. He is further limited to unskilled, simple, repetitive tasks. He must not perform fast-paced or strictly time-limited tasks. He should work in a relatively static work environment. The claimant can interact occasionally with coworkers and members of the general public, but should generally work alone on tasks requiring minimal social demands;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 10, 1980 and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not

---

[1] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a);

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 9, 2016, through the date of this decision (20 CFR 404.1520(g)).

Tr. 54-70.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on July 17, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 70.

## ANALYSIS

Plaintiff asserts three points of error. First, Plaintiff argues that the Appeals Council improperly rejected the opinion of Plaintiff's treating nurse practitioner Laura Lufkin ("Ms. Lufkin"). *See* ECF No. 13-1 at 17-19. Next, Plaintiff argues that the ALJ's physical RFC was impermissibly based on a lay interpretation of "extremely complex raw medical evidence." *See id.* at 19-26. Finally, Plaintiff argues that the ALJ failed to reconcile how Plaintiff could maintain a regular schedule despite his high frequency of medical treatment throughout the relevant period. *See id.* at 26-29.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77. As explained further below, the Court finds that Plaintiff's complaint regarding the

ALJ's failure to reconcile Plaintiff's frequent medical treatment with the ability to maintain a regular work schedule has merit.

The evidence shows that Plaintiff experienced a slip-and-fall injury at work on February 9, 2016, injuring his back, right leg, and right arm. Tr. 332-33. In June 2016, radiological studies disclosed that Plaintiff had multiple sclerosis. Tr. 406. Although studies have disclosed more lesions in his brain and spinal cord over the last three years, his condition is deemed stable. Tr. 680, 814, 1253. His EMG studies have sometimes been normal, but a recent study demonstrates abnormalities. Tr. 934-34. The medical evidence of record also notes continuing complaints of fatigue for the past few years. *See, e.g.*, Tr. 401, 408, 409, 415, 517, 679, 693, 800, 872, 1213, 1260, 1279.

A review of the above records, primarily from DENT Neurologic Institute ("DENT") and Daniel Salcedo, M.D. ("Dr. Salcedo") reveal regular treatment visits approximately twice a month, sometimes more. Parsed from the records are multiple visits for Botox injections, trigger point injections, and infusion therapy for Plaintiff's MS. *See, e.g.*, Tr. 404, 676, 741, 865, 876, 889, 963, 1041, 1047, 1060, 1205, 1210, 1217, 1220, 1225, 1268, 1284, 951-62; 1238-41, 1301-03, 1050, 1207, 1222, 1276. The need for infusion therapy appears to be a rather new treatment regimen for Plaintiff. The hearing testimony was somewhat confusing as to how often Plaintiff presented for therapy versus follow-up visits. He testified that DENT was, in fact, his "second home" and also appears to have received some psychological counseling in addition to his MS therapy. Tr. 96-97. At one point he testified, that he received Botox and trigger point injections once a week and a three-day regimen for infusion therapy. Tr. 97. Later in the hearing, Plaintiff's counsel elicited testimony that his Botox injections were every ninety days, and his trigger point injections once a month. Tr. 111.

In any event, the records reflect that Plaintiff consistently received trigger point injections about every four weeks, although it is unclear whether this was treatment protocol for his MS or merely for his cervical pain complaints. The records also reflect that he receives Tysabri IV for his MS about every six weeks. Although he complains of pain, there are no significant disc or joint issues. Tr. 1133. He generally has a normal gait and good strength. Although an MRI in May 2017 assessed findings "consistent with stable disease" (Tr. 814), the records also reflect that there may well have been some issues with his MS. In a sixteen-month period he had over 45 doctor appointments at DENT, or with Dr. Salcedo. Plaintiff points out a helpful example to put Plaintiff's treatment volume in perspective: In August 2018, Plaintiff had Botox injections on August 7 (Tr. 1276); treated with Wendy Callen, R-PAC, at DENT, on August 9 (Tr. 1260); had trigger point injections on August 17 (Tr. 128); and Nicole Miller, PA-C, at DENT, on August 20 (Tr. 1265); and received a Tysabri infusion on August 24 (Tr. 1301). *See* ECF No. 13-1 at 27. While there were months with fewer appointments, in most months Plaintiff had three or more medical appointments across his multiple treatment teams, injections, physical therapy, medication management or counseling.

Based on the foregoing, it appears likely that Plaintiff's treatment schedule could interfere with the ability to work, which needed to be considered in the ALJ's analysis. Notably, the VE indicated that if an individual missed three days of work per month that would "eliminate all competitive employment." Tr. 117. "Absenteeism due to the frequency of treatment is a relevant factor so long as the treatment is medically necessary and concerns the conditions on which the disability claim is founded." *Bellinger v. Comm'r of Soc. Sec.*, No. 3:17-CV-1692 (MPS), 2018 WL 6716092, at *2 (D. Conn. Dec. 21, 2018); *see also Arnold v. Comm'r of Soc. Sec.*, No. 17-CV-987S, 2019 WL 2521179, at *7 (W.D.N.Y. June 19, 2019) (remand where the ALJ failed to

7

reconcile absenteeism due to recovery from multiple surgeries that "could reasonably foreclose all employment possibilities"); *Wiltsie v. Comm'r of Soc. Sec.*, No. 17-CV-1201, 2019 WL 3219320, at *8 (W.D.N.Y. July 17, 2019) (the ALJ failed to reconcile that the claimant suffered from a combination of impairments that caused her to visit doctors and hospitals quite often). "Where the ALJ has made no findings about the limitations caused by the claimant's need for treatment, courts have remanded because it is not the role of the court to speculate as to the ALJ's rationale." *Quinto v. Berryhill*, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *5 (D. Conn. Dec.1,2017).

The Court finds that the ALJ should address the issue of needed treatment, as well as ongoing monitoring for his MS, to determine whether such would change the ALJ's RFC for sedentary work as noted. Since this is a chronic disease the ALJ should consider how much time on a monthly basis Plaintiff will have to receive treatment and follow up with his doctors, and whether the frequency of his treatment would impact his ability to obtain gainful employment. The Court is aware that many individuals with relapsing/remitting MS are able to work and lead productive lives. However, given the recent onset of Plaintiff's disease and the treatment modalities offered to him by his various providers, some consideration should be given to his treatment regimen and whether his ability to work would be impacted for the period under consideration .An individual  should not be found disabled simply because of frequent medical visits—only if those visits are medically necessary to treat the noted impairments and interfere with the ability to work. *See Bellinger v. Comm'r of Soc. Sec.*, 2018 WL 6716092, at *2. Accordingly, the Court finds that remand is required on the narrow ground that Plaintiff's condition may require absences from work for treatment and this should be addressed by the ALJ.

Because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court need not

address Plaintiff's other arguments. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted*); Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, *261 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

*[signature]*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE